**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANTHONY T. HAMPTON,

         Plaintiff,

vs.

BRIAN CONNETT, RANDY BULLOCH, DWIGHT NEVENS, GREG COX, and JENNIFER NASH,

         Defendants.

Case No.: 2:14-cv-01110-GMN-VCF

**ORDER**

Pending before the Court is the Motion for Summary Judgment (ECF No. 49) filed by Brian Connett, Dwight Nevens, Greg Cox, and Jennifer Nash ("Defendants").[1] Plaintiff Anthony T. Hampton ("Plaintiff") filed a Response (ECF No. 52), and Defendants filed a Reply (ECF No. 55).

**I.    BACKGROUND**

This case arises out of a prisoner's pay dispute. (*See* Def.'s Mot. for Summ. J. ("Def.'s MSJ") 3:6–12, ECF No. 49). Plaintiff is an inmate incarcerated in the Nevada Department of Corrections ("NDOC") and housed at High Desert State Prison ("HDSP"). (*Id.* 3:6–7).

While at HDSP, Plaintiff worked for the private company Alpine Steel, LLC ("Alpine Steel") pursuant to a contract between the NDOC and Alpine Steel. (*See id.* 3:6–7). The contract provided that Alpine Steel would use HSDP premises and be allowed to hire inmates to manufacture metal construction components. (*Id.* 3:2–5); (*see also* Contract, Ex. A to Def.'s

---

[1] Summons was issued for Defendant Randy Bulloch on June 22, 2015 (ECF No. 31), and it was returned unexecuted on July 6, 2015 (ECF No. 33). Defendant Bulloch does not have counsel and has not filed anything at this point. The Court recently entered a Notice of Intent to Dismiss Defendant Bulloch pursuant to FRCP 4(m). (*See* ECF No. 59).

MSJ, ECF No. 49-1). The contract stated in part: "The inmate workers worked by ALPINE STEEL shall be employees of ALPINE STEEL. ALPINE STEEL shall pay inmate wages . . . [and] issue W-2's to inmate workers as required by the federal government." (Contract ¶ 12.1). Further, the contract dictated that Alpine Steel was an independent contractor. (Contract ¶ 20).

Plaintiff filed his Complaint on July 8, 2015, against several officials at HDSP and Alpine Steel Owner Randy Bulloch,[2] alleging § 1983 violations of Plaintiff's "First Amendment right to redress prison grievance 'retaliation,'" along with "Fourteenth Amendment Due Process and Equal Protection/Federal Fair Labor Standards Act (FLSA)." (Compl. at 4–7, ECF No. 3). Plaintiff sued each Defendant in his or her individual and official capacity. (*See id.* at 2–3). Specifically, Plaintiff alleged that he "inquired about his pay not being posted to his account for several months of work that he had done for Alpine Steele [sic]/Prison Industries." (*Id.* at 3). Plaintiff alleged that because of this inquiry, Defendants then "failed to pay Plaintiff his wages owed in full, rejected his grievances and paid all other Alpine Steele [sic] employee's [sic] except Plaintiff." (*Id.*).

On March 6, 2015, Defendants filed an initial Motion for Summary Judgment. (ECF No. 14). The Court found that this Motion was "filed prematurely" and denied it without prejudice. (Order 2:1–8, ECF No. 48). On November 23, 2015, Defendants filed the instant Motion for Summary Judgment, asserting that Plaintiff's claims fail on two grounds. (ECF No. 49). First, Defendants argue that Plaintiff failed to exhaust his administrative remedies because he "chose not to appeal the non-acceptance of his first-level grievance . . . [thereby] abandon[ing] his grievance." (Def.'s MSJ 10:25–26). Second, Defendants contend that Plaintiff was not "subject to adverse action by a state actor . . . [because] all HDSP inmates performing work for Alpine

---

[2] It is unclear from the record whether Defendant Bulloch is the current or former owner of Alpine Steel. Plaintiff's Complaint names him as the "Owner of Alpine Steel" (Compl. at 2), but Defendant's Motion for Summary Judgment refers to him as the "former owner of Alpine Steel" (Def.'s MSJ 4:17). However, this distinction is not at issue here as Defendant Bulloch is not a party to this Motion.

Steel were employees of Alpine Steel and payment for services performed by the inmates was the responsibility of Alpine Steel," whereas Defendants "are employed by the NDOC, not Alpine Steel." (*Id.* 12:13–18).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed

to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth "specific facts" by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The nonmoving party's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, if the evidence of the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *See id.* at 249–50 (citations omitted).

### III. DISCUSSION

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Courts should decide exhaustion before examining the merits of a prisoner's claim.  *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).  Exhaustion is mandatory regardless of the form of relief sought by the prisoner. *See Booth v. Churner,* 532 U.S. 731, 739 (2001) (prisoners are obligated to navigate all of a prison's administrative process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible"), *overruling Rumbles v. Hill*, 182 F.3d 1064 (9th Cir. 1999).  However, "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

      The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it.  *Albino*, 747 F.3d at 1169, 1172.  Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172.  The ultimate burden, however, rests with the defendant. *Id.*  Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).  If a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case then proceeds to the merits. *Albino*, 747 F.3d at 1171.

      Defendants' Motion for Summary Judgment includes a copy of the NDOC Administrative Regulation (AR) 740, entitled "Inmate Grievance Procedure," which governs the NDOC grievance policy. (AR 740, Ex. D to Def.'s MSJ, ECF No. 94-4).  In order for a plaintiff

to exhaust available remedies, AR 740 first requires the inmate to discuss the issue with a caseworker prior to initiating the grievance process. (AR 740.04 at 5). The procedure then proceeds as follows: (1) an Informal Grievance; (2) a First Level Grievance appealing the Informal Grievance decision to the warden; and (3) a Second Level Grievance, which is decided by the Assistant Director of Operations. (AR 740.05–.07 at 5–10). "In the event an inmate's claim is deemed inappropriate for review or not within the intended scope of this Regulation, the inmate may appeal that decision only to the next procedural level of review." (AR 740.03(5) at 4). A.R. 740 requires NDOC officials to respond at each grievance level within a specified time period, beginning from the date of receipt of the inmate's grievance. (AR 740.05–.07 at 5–10). "An inmate who is dissatisfied with the response to a grievance at any level may appeal the grievance to the next level" within five days after the return of a decision. (AR 740.03(6) at 4). The NDOC "shall automatically allow appeals without interference." (AR 740.03(6)(A) at 4).

    Here, Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to filing this case. (Def.'s MSJ 9:15–11:8). Specifically, Plaintiff brought this issue as a grievance twice through the Informal Grievance. (See Ex. F to Def.'s MSJ, ECF No. 49-6) (Grievance No. 20062956357); (Ex. H to Def.'s MSJ, ECF No. 49-8) (Grievance No. 20062974717). The first time, Plaintiff did not appeal the Informal Grievance decision. (*See* Pl.'s Resp. 8:23–9:18). The second time, Plaintiff timely appealed the Informal Grievance decision to the First Level Grievance. (Pl.'s Resp. 9:18–20); (Ex. J to Def.'s MSJ, ECF No. 49-10) (Grievance No. 20062974717). When this First Level Grievance was denied, however, Plaintiff did not appeal that decision to the Second Level Grievance. (Pl.'s Resp. 9:19–23); (Def.'s MSJ 10:22–23). Defendants assert that Plaintiff's failure to proceed through the full three-level process demonstrates Plaintiff's failure to exhaust. Plaintiff responds that he was "precluded from exhaustion by Defendant Nash." (Pl.'s Resp. 3:5–6). Specifically, Plaintiff contends that "Defendant Nash rejected the grievances neglecting to have a higher level

review." (*Id.* 9:9–10).  Plaintiff also asserts that no administrative remedies remained available to him because Defendants rejected his grievance. (*Id.* 11:2–5).

Each time Plaintiff raised the issue in a grievance, Defendants responded that Plaintiff's grievance was "not accepted because the grievance issue [was] with Alpine Steel, not NDOC." (Def.'s MSJ 10:3–4, 10:15–16, 10:19–21); (*see also* Exs. G, I, K to Def.'s MSJ, ECF Nos. 49-7, 49-9, 49-11).  However, the Court finds that AR 740.03(5) is determinative here.  Even though Plaintiff's "claim [was] deemed inappropriate for review or not within the intended scope of [AR 740]," Plaintiff was still required to exhaust his administrative remedies, which included the Second Level Grievance. (*See* AR 740.03(5) at 4).  Plaintiff does not dispute that he never proceeded to the Second Level Grievance. (*See, e.g.*, Pl.'s Resp. 9:15–20).  Nor does Plaintiff assert that Defendants took any affirmative steps to stop him from filing a Second Level Grievance.  Pursuant to AR 740, Defendant Nash was not required to take Plaintiff's grievance to "a higher level."  Rather, AR 740 places the burden on Plaintiff to appeal the grievance to the next level, and only requires that NDOC officials "automatically allow appeals without interference." (*See* AR 740.03(6)(A) at 4).  Accordingly, the Court finds that Plaintiff failed to exhaust his administrative remedies, and Defendants are entitled to summary judgment.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 49) is **GRANTED**.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this __20__ day of September, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court